440 So.2d 98 (1983)
STATE of Louisiana
v.
Anthony Wayne MORROW.
No. 82-K-2081.
Supreme Court of Louisiana.
October 17, 1983.
*100 John Wilson Reed, Glass & Reed, New Orleans, for relator.
Marion B. Farmer, Dist. Atty., Margaret Coon, Asst. Dist. Atty., for respondent.
LEMMON, Justice.
We granted certiorari to review the trial court's denial of relator's application for postconviction relief. 421 So.2d 239. The application challenged relator's aggravated kidnapping and forcible rape convictions on two principal bases, one of which was that his retained lawyer's joint representation of both him and his codefendant, Michael Burge, created a conflict of interest which denied him effective assistance of counsel. After reviewing the records of the original trial and of the postconviction hearing, we conclude that relator did not receive effective assistance of counsel on the aggravated kidnapping charge, because the trial attorney's joint representation of the codefendant, undertaken for an additional fee without full disclosure to relator of the potential disadvantages, prevented that attorney from presenting evidence, cross-examining witnesses and making arguments to the jury on the state's failure to prove relator's participation in the initial abduction of the victim and on his undisputed lesser culpability in the entire sequence of events.
Facts
On July 28, 1976, the victim, a 48-year old practical nurse, stopped to purchase groceries after an evening class. As she entered her car in the parking lot after shopping, a young man (later identified as Michael Burge) rapidly approached her and held a sharp object to her neck, telling her "[d]on't say a word and you won't get hurt". He forced her to move over, got into the driver's seat, drove a short distance, and stopped very briefly. Relator quickly entered the car, as Burge warned the victim that the other passenger would "blow her head off" if she did not cooperate, implying that relator was armed with a pistol which was trained on her. Burge then sped onto the highway.
As Burge drove recklessly around the streets of Slidell, he demanded that the victim give him her money. When she could produce only five or six dollars, Burge became furious and told her to "think real good, old bitch" about where she could find more money. Although the victim could not see relator in the rear seat, she heard what she referred to as an "echo" by a young voice as relator repeated Burge's threats and abusive language. At one point Burge told relator "don't fool with that gun... [because] we don't want to kill anyone if we don't have to".
*101 Burge eventually drove out of town and along a rural road, where he unzipped his pants and ordered the victim to place her mouth on his penis. She begged to be spared this indignity, but Burge grabbed her head and forced it down upon his penis. When the victim bit him, Burge stopped the car, ordered her to undress, tore her blouse, took what appeared to be a knife and tried to cut away her brassiere. He forced her to submit to an act of intercourse in the front seat of her automobile. Burge then asked relator if he wanted to have intercourse and ordered the victim to get into the backseat with relator. When she refused, he slapped her and caused her to cry. Relator then climbed into the front seat and had intercourse with the victim.
When Burge resumed driving, relator said he wanted to have intercourse again. The victim objected, and Burge slapped her again and continued driving to the river, where he threw away the victim's purse. He drove back to the highway and ordered her to get out, warning her not to look back or tell anyone about the incident. She began running and came to a lighted house, where she reported the incident.
The police were already searching for the victim's car, having been alerted by a person who had seen the incident in the parking lot. The victim was interviewed by the police and then examined by a gynecologist, who discovered immotile sperm in her vaginal tract and found signs of trauma, indicative of forcible intercourse.
Utilizing an excellent description of Burge provided by the victim, police apprehended both Burge and relator the next day. The victim identified Burge as the driver. Burge and relator, who were 17 and 16 years old respectively, separately admitted to the arresting officers that they had abducted and raped the victim.
After being indicted for aggravated rape and aggravated kidnapping, relator retained an attorney and entered a combined plea of not guilty and not guilty by reason of insanity. Later, the same attorney additionally undertook to represent Burge, who also entered the same combined plea. Although relator did not object to the joint representation, the attorney did not explain to relator or his family the potential advantages and disadvantages. However, the attorney agreed that he would withdraw from Burge's representation if relator felt it was appropriate.
At trial, defense counsel did not endeavor to contest the victim's version of the incident or the role played by each defendant in the sequence of events.[1] Instead, counsel focused on developing evidence that Burge and relator were so highly intoxicated from consuming beer and Seconal that they were incapable of forming the specific intent required for aggravated kidnapping or of distinguishing right from wrong.[2] The prosecutor challenged the defense theory in closing argument, pointing out that the defense did not establish the amount of drugs and alcohol taken by the two young men and that the victim's description of the men's behavior indicated that they were simply not in the "drugged" state that the defense attempted to portray.
The jury found both defendants guilty of aggravated kidnapping. The jury also found Burge guilty of aggravated rape as charged, but only convicted relator of forcible rape.
At the penalty trial conducted on the aggravated kidnapping conviction, the prosecutor presented no additional evidence or *102 argument.[3] However, both Burge and relator testified and begged for their lives, stating simply that they were so much under the influence of drugs and alcohol at the time that they were "unaware" of their actions. The prosecutor did not cross-examine either and did not argue in favor of the death penalty. In fact, he made no closing argument, but simply submitted the case to the jury, telling the jurors that the question of penalty was in their hands.
The jury recommended life imprisonment without parole for both. The trial court sentenced Burge to consecutive life sentences and sentenced relator to 20 years imprisonment for forcible rape, to run concurrently with the life sentence without parole for aggravated kidnapping. On appeal, relator's conviction and sentence were affirmed.[4]State v. Burge and Morrow, 362 So.2d 1371 (La.1978).
Effective Assistance of Counsel
At the hearing on the postconviction application, relator testified that he and Burge had gone to the store to buy beer, but were unable to cash a check; that Burge left him outside the store and went to seek a ride home with his mother's friend that he had seen in the parking lot; that he thought the car Burge was driving belonged to his mother's friend; and that he did not realize the lady had been kidnapped until he heard the demand for money. He further testified that he told this story to his lawyer in the first interview. The trial attorney was called as a witness for the state, but was not asked to confirm or deny that relator had described this version to him.[5]
Relator's present counsel argues that his initial lack of guilty knowledge was a complete defense to an indictment charging "a forcible seizing and carrying" of the victim from one place to another, since relator did not knowingly participate in the "seizing", but only in "the carrying". La.R.S. 14:44(1).[6] Counsel further argues that relator was denied effective assistance of counsel *103 when his former attorney was confronted with an actual conflict of interest in that he was unable to present this plausible defense on relator's behalf without focusing guilt on Burge.
Effective representation includes the requirement of undivided loyalty. When codefendants retain the same attorney in order to present a common defense, the risk exists that a conflict of interest may develop.[7]
Since the conflict of interest issue is raised in the present case in a postconviction context, the decision in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), governs the analysis. The Sullivan decision reaffirmed that multiple representation does not in itself deprive an accused of effective assistance of counsel and held that an accused who did not object to multiple representation before conviction must show, in order to establish a Sixth Amendment violation, that "an actual conflict of interest adversely affected his lawyer's performance". See State v. Edwards, 430 So.2d 60 (La.1983); State v. Kahey, 436 So.2d 475 (La.1983). Such a showing requires more than the existence of a theory of defense which, in the clear light of hindsight, appears to have been better than the defense theory used unsuccessfully at trial.[8]
When an ineffective assistance complaint is based on the trial attorney's failure to develop a completely different strategy, a reviewing court is understandably hesitant to speculate on the merits of the defense which was not presented because of a conflict of interest. However, the critical inquiry is not whether the unraised defense would have been successful, but whether the defense was plausible. When multiple representation forecloses the use of a plausible defense that might have benefitted one defendant, but would have prejudiced the jointly represented codefendant, the conviction must be overturned, unless there has been an express and knowledgable waiver of the right to conflict-free counsel. Foxworth v. Wainwright, 516 F.2d 1072 (5th Cir.1975). The conflict of interest occurs not in the attorney's choice of defenses, but in the attorney's inability to make a free choice.[9] Moreover, the fact that the attorney chose a defense which was as equally plausible as the unraised defense (or perhaps even stronger) is of no moment, as long as counsel's failure to raise the plausible defense because of the conflict prejudiced his client.
In the present case, relator's defense of noninvolvement in the initial abduction of the victim was at least a plausible defense to the aggravated kidnapping charge. Admittedly, the jury's verdict was not susceptible of a claim of insufficient evidence.[10] However, the state's own evidence *104 offered relator a plausible theory of innocence or of culpability only for a lesser offense, and relator was entitled to have a jury determine his verdict on the basis of evidence and argument that was not curtailed or limited because of his attorney's divided loyalty.
We accordingly proceed to examine the evidence and arguments which relator's attorney could not present on relator's behalf without casting the mantle of guilt on Burge.
At the postconviction hearing, relator testified without contradiction that he told his trial counsel he was waiting for a ride home and did not initially know of the kidnapping. Yet the trial attorney did not present evidence or argument on this point even in the penalty phase, presumably because he could not do so without emphasizing Burge's guilt.
The victim and the witness to the incident in the parking lot clearly testified that Burge alone performed the initial abduction. Nevertheless, relator's trial counsel failed to emphasize to the jury, through cross-examination and argument, that relator did not participate in the initial abduction. More importantly, counsel never emphasized relator's lesser overall culpability, not even during the penalty phase when the jury was considering the death penalty for both defendants. The state argues that the facts establishing relator's lesser culpability were before the jury, but that argument underplays the role of advocacy. The importance of emphasizing relator's lesser role is best illustrated by the fact that this court on original appeal mistakenly stated, in reciting the undisputed facts, that "defendants placed a sharp object at the throat of a female shopper as she returned to her car" and "[t]he two then forced the woman into the passenger side of the vehicle and drove her to a deserted area, where she was beaten and raped". (Emphasis supplied)
Trial counsel also did not follow up on Cantrell's statement at the original trial that relator told him he was waiting "around the side of the building wanting to go home" after they couldn't cash the check. See note 5, above. Neither did the attorney argue that point to the jury. Moreover, Cantrell later testified at the postconviction hearing that Burge told him "not to get mad at [relator] for anything that had happened, because [Burge] had forced [relator] to go with him". Cantrell further testified that he had told relator's attorney that Burge had pulled a knife on relator and forced him to go to the store, but the attorney instructed Cantrell not to mention this. The trial attorney was not asked to confirm or deny the testimony, which therefore stands uncontradicted.
Relator's sister testified at the postconviction hearing that Burge, who had just gotten out of jail, had pulled a knife on relator shortly before they left for the store, but that relator's attorney instructed her not to say this in court. The district attorney also did not question the trial attorney on this point.
Additionally, since relator had no prior record and was clearly the less culpable of the two defendants, there was no compelling reason for him not to testify, except that his testimony would have drawn the jury's attention, directly or indirectly, to Burge's greater culpability.[11] Yet relator's trial counsel never advised him nor discussed with him the potential advantages of taking the stand, presumably because of the difficulty in "serving two masters".
Finally, relator's attorney presented no argument to the jury, even in the penalty phase, which pointed out that relator may *105 have been innocent or at least guilty only of simple kidnapping. Clearly, the conflict of interest deprived relator of a meaningful chance to have the jury consider his lesser culpability as to the aggravated kidnapping charges. The fact that the jury on its own recognized a difference in culpability between a defendant who used a knife to commit rape and one who simply followed the aggressive leader suggests that the jury may have recognized a difference in culpability for the kidnapping, if the pertinent facts had been argued by an attorney solely interested in relator's welfare.
The representation as to the intoxication defense was vigorous and well presented. Nevertheless, there was another plausible defense that could not be presented because of an actual conflict of interest. Significantly, the two defenses were not inconsistent, but were supplemental, since a conflict-free attorney could have argued that relator was so intoxicated that he could not form the specific intent required for aggravated kidnapping (or could not discern right from wrong as to either offense), or alternatively that relator did not plan the kidnapping and did not realize in his dazed condition that a kidnapping had occurred until Burge had already seized the victim and carried her away.
We conclude that the evidence and argument, which relator's attorney was precluded from presenting because of a conflict of interest, might have influenced twelve reasonable jurors, under the overall circumstances of this case, to return a different verdict (such as simple kidnapping, with a five-year maximum sentence).[12] At the very least, relator was entitled to have a jury (rather than an appellate court) make this determination on the basis of evidence and argument forcefully presented by an advocate solely interested in his welfare.
A Louisiana lawyer should not accept separate fees for joint representation of two codefendants in a criminal case and then fail to present on behalf of one codefendant a plausible defense consistent with the common defense simply because of the potential devastating effect on the second codefendant (at least without the knowledgable consent of the affected codefendant after full disclosure). A Louisiana trial court should not allow multiple representation without inquiry into such potential conflicts of interest. But when this has happened, as proved by relator in this case, a Louisiana appellate court cannot allow a conviction obtained under such circumstances to stand, when the actual conflict of interest adversely affected the trial attorney's performance.
We therefore hold that relator has proved an actual conflict of interest which adversely affected his attorney's performance and accordingly is entitled to a new trial on the charge of aggravated kidnapping.[13]
For these reasons, relator's conviction of aggravated kidnapping is set aside, and the matter is remanded to the district court for a new trial on that charge.
DIXON, C.J., and WATSON and MARCUS, JJ., dissent.
NOTES
[1] In addition to the victim's testimony, the medical evidence, and the inculpatory statements, the state presented other witnesses who saw Burge and relator in the area of the kidnapping or who were told by them of the kidnapping and rape.
[2] Defense counsel attempted to establish the degree of defendants' intoxication through cross-examination of the state's witnesses and presentation of other witnesses who had seen defendants that night. Counsel also presented two psychiatrists, who opined that the combined effects of alcohol and barbiturates could create a state of mind incapable of forming a specific intent and that such consumption could impair a person's thinking process to the extent that the person could not distinguish right from wrong.
[3] Over defense counsel's objection, the trial court conducted a bifurcated penalty hearing under La.C.Cr.P. Art. 905 et seq., although the crime had been committed before that capital sentencing hearing procedure was enacted by the Legislature.

The second contention of relator's postconviction application complained of the trial court's decision to try the aggravated kidnapping charge as a capital case, a decision which permitted the state to exercise 57 challenges for cause under La.C.Cr.P. Art. 798(2) on the basis of the prospective juror's conscientious scruples against the death penalty.
[4] Burge's sentence for aggravated rape was set aside on appeal for reasons not applicable to relator's sentence for forcible rape.
[5] Relator's postconviction hearing testimony was corroborated to some extent by Lloyd Cantrell, a witness called by the state, who testified at the original trial that "[t]hey told me that they had went to the Sunflower to cash a check and couldn't cash it, and Tony was around the side of the building wanting to go home, and that Mark had come around with a car with a lady in it and picked him up, then they took off and raped her." (Emphasis supplied)
[6] La.R.S. 14:44 provides in part:

"Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
"(1) The forcible seizing and carrying of any person from one place to another; or
"(2) The enticing or persuading of any person to go from one place to another; or
"(3) The imprisoning or forcible secreting of any person."
Relator's counsel argues that the portion of statute proscribing the "imprisoning" of the victim could not have been relied on by the state, because the indictment and closing argument only referred to Subsection (1) of the aggravated kidnapping statute. Moreover, the trial judge instructed the jury only on Subsection (1).
However, in this case we need not decide the merits of defendant's present theory of substantive criminal law. Whether an "initially innocent" person is guilty of "seizing and carrying" if he joins another who has already "seized" the victim and aids the other in forcibly and unlawfully holding and transporting the victim is not at issue, because the question here is not simply whether the defense would have been successful, but whether defendant's trial counsel provided ineffective assistance because a conflict of interest prevented his raising and arguing this plausible defense.
[7] Trial courts and defense attorneys can effectively avoid problems of multiple representation by preventative measures. In every case of multiple representation, the trial court should inquire into potential conflicts and inform the accused on the record of the possible dangers. ABA Standards for Criminal Justice, The Function of the Trial Judge § 3.4(b) (1st ed. 1974, deleted in 2d ed.); see also Fed.R. Crim.P. 44(c), adopted in 1980, which requires the court to inquire into joint representation and to advise each defendant of his right to the effective assistance of counsel, including separate representation. And defense attorneys should ordinarily decline for ethical reasons to represent more than one of several codefendants, unless a careful investigation reveals there is no likely conflict and the codefendants have consented, on the record after full disclosure, to the multiple representation. ABA Standards for Criminal Justice, The Defense Function § 4-3.5(b) (2d ed. 1980); Code of Professional Responsibility, DR5-105(A), (C).
[8] As noted in United States v. Benavidez, 664 F.2d 1255 (5th Cir.1982), an untested theory always looks better than an unsuccessful one.
[9] Of course, the client can make an informed choice to forego a plausible defense and to adhere to a common defense with the codefendant, thereby waiving his right to conflict-free counsel. However, such a choice must be knowingly made after full disclosure by the attorney, which indisputably did not occur here.
[10] If relator had raised the "innocent passenger" theory in the context of an insufficiency of evidence claim for postconviction relief (a claim which, if successful, would bar retrial), he would have been destined to failure, in the light of the strong circumstantial evidence that the two young men plotted the kidnapping and robbery together. Certainly, a rational juror could have concluded from the evidence, viewed in the light most favorable to the prosecution, that relator was guilty beyond a reasonable doubt as a principal of every element of the crime of aggravated kidnapping.
[11] Of course, relator's taking the stand would have left him open for cross-examination on the rape charge. However, relator has never contested the evidence of rape. In fact, he testified at the postconviction hearing that there were a "lot of things I can't remember about the whole thing", including "actually raping this woman".
[12] Clearly, the two defendants should not have received the same sentence. The trial judge implicitly recognized this by imposing concurrent sentences on relator. The jury very well may have declined to return a verdict requiring mandatory life sentences for both defendants.
[13] Relator does not challenge the effectiveness of counsel's representation of him on the aggravated rape count. There is no allegation that any plausible defense on that count was not raised due to the joint representation. The jury returned a lesser verdict of forcible rape on that count.