BARRY, Judge.
Defendants Ernest Taylor and Raymond Collins were charged with theft of a ladder worth $300, LSA-R.S. 14:67. After the State rested, defendants’ attorney moved for a severance and the appointment of counsel for each defendant. The court denied the motion and both defendants were found guilty by a six-person jury. On appeal defendants contend they were deprived of their constitutional right to conflict-free, effective assistance of counsel.[1]
Guy Massey, a telephone repairman, testified he was repairing a cable on the roof of a building in the French Quarter at about 9:45 a.m. on February 5, 1983. Massey heard a rattling noise coming from the area where his truck was parked, looked down, and saw defendant Taylor removing a ladder from the truck. Taylor was assisted by another man who helped carry the ladder away. Massey did not see the other man’s face, but was able to describe his body build and noted that he was wearing a cowboy hat. Taylor and the ladder were identified by Massey.
Mrs. Marie Breaux testified that at approximately 10:15 a.m. on February 5, 1983 she was startled by a “bump” on the side of her house “like something hit the wall.” She looked out and saw defendants Taylor and Collins standing by a ladder propped up against her house. She recognized both men as persons who frequented the neighborhood. Collins was wearing a white cowboy hat. Taylor asked if she wanted to buy a ladder for a dollar. Mrs. Breaux called the police and when Officers Black and Britt arrived they observed Taylor and Collins holding a large extension ladder. The officers had seen both men in the French Quarter prior to that time. Taylor and Collins dropped the ladder and ran, but Taylor was caught and returned to Mrs. Breaux’s house where she identified him as the man who offered to sell the ladder for $1.00. While the officers were at Mrs. Breaux’s house they received a call concerning a ladder stolen from a telephone truck. Massey arrived and identified the ladder and Taylor as the man he saw take the ladder from his truck. Frank DeMouy, a supervisor for South Central Bell, went *651 to the scene and identified the ladder by serial number.
The next day, February 6th, Officer Black was patrolling in the French Quarter when he saw Collins, who was still wearing the white cowboy hat. Black took Collins to Mrs. Breaux’s house where she identified him as the man with Taylor when he tried to sell the ladder.
Mr. DeMouy testified the ladder cost $295.70 and estimated it was no more than two years old and in very good condition.
Defendant Taylor testified he and Collins had been drinking wine on February 5th but denied they stole the ladder. Taylor said he saw the ladder on the sidewalk and propped it against Ms. Breaux’s house. Taylor denied offering the ladder to Ms. Breaux for $1.00.
Defendant Collins admitted drinking in the area on February 5th but denied stealing the ladder. Collins did not say whether or not he was with Taylor that morning. Both defendants admitted numerous convictions for public drunkenness and other municipal offenses. In addition, Taylor had a prior conviction for “breaking in a car” and Collins had a prior theft conviction.
Although defendants have not challenged the sufficiency of the evidence to support their convictions, we have reviewed the record. State v. Raymo, 419 So.2d 858 (La.1982). We are convinced that a rational trier of fact could have found every element of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La. 1982).
C.Cr.P. Art. 704 in Chapter XXIV of the Code, dealing with “Procedures Prior to Trial,” requires that:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Representation of multiple defendants by one attorney does not violate federal or state constitutional rights to adequate legal assistance unless such representation gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983); State v. Ross, 410 So.2d 1388 (La.1982). The test to be used by the reviewing court to ascertain whether joint representation has led to ineffective assistance of counsel is controlled by the time at which the claim of conflict is made. State v. Edwards, 430 So.2d 60 (La.1983); State v. Marshall, 414 So.2d 684 (La.1982), U.S. cert. den. 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).
In Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court ruled that, if a defendant makes a pretrial motion to sever and have separate counsel appointed, the trial court is required “either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel.” If a conflict of interest is alleged after trial, a defendant “in order to establish a violation of the Sixth Amendment ... must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), cited in State v. Edwards, 430 So.2d 60, 62 (La.1983).
In this case, defendants raised their claim of conflict after the State’s case but before any defense evidence. Defendants contend the Holloway rule should apply because the Sullivan test is a “harsh rule” formulated to deter post-trial “sandbagging.” Defendants argue they were in good faith and “timely moved for severance or mistrial when it became obvious that representation of the two defendants created a conflict which required the appointment of separate counsel and severance.”
The State argues the Sullivan rule should govern because the motion to sever *652 was not filed pre-trial as required by C.Cr.P. Art. 704 and as was the situation in Sullivan. The State points out that by the time defendants moved to sever, the trial court had heard the evidence, including identification testimony, and was in a position to determine if there was an actual conflict requiring a severance.
The State further contends that, even if the Holloway pretrial standard is applied, the trial court heard defense counsel’s argument which only concerned the amount of evidence against each defendant but did not show any conflict in their defenses or strategies. Thus, the judge made a determination that “the risk of conflict of interest was too remote to warrant separate counsel.”
We feel this case should be governed by the Sullivan rule, i.e., there must be a showing of “actual conflict”. Holloway was designed for a pretrial situation where defense counsel anticipates the possibility of antagonistic defenses and advises the court of the potential conflict. At that point, it is appropriate for the court either to appoint separate counsel or investigate to determine if the risk of conflict is “too remote to warrant separate counsel.” Here, when counsel moved on behalf of Collins to sever, he did not mention antagonism or incompatibility between the defenses of his two clients, nor did he assert there were any defenses or evidence he couldn’t present because of his joint representation. During argument the only ground raised was that one of the three State’s witnesses who identified both defendants had not seen Collins’ face. The trial judge correctly ruled that a disparity in the evidence against each defendant affected the weight of the evidence, but did not indicate any conflict. See State v. Edwards, supra and State v. Gaskin, 412 So.2d 1007 (La.1982). Thus, at the time the severance was requested there did not appear to be a conflict.
It was not until this appeal that defendants claimed their trial counsel was precluded from questioning the credibility of Taylor regarding Collins’ whereabouts at the time of the theft. This colorable claim of conflict was first raised post-conviction and is another reason why we feel the Sullivan test is appropriate.
Application of the Sullivan standard was discussed in State v. Kahey, 436 So.2d 475, 484-85 (La.1983):
Therefore, in a case such as the present one, where the record does not establish that pretrial notification of the possibility of a conflict of interest was given to the court, the defendant must prove that an actual conflict of interest adversely affected his lawyer’s performance. State v. Rowe, 416 So.2d 87 (La.1982). An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. Zuck v. Alabama, 588 F.2d 436 (5th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
Defendants argue that, because of their attorney’s dual representation, he was precluded “from questioning the credibility of the co-defendant [Taylor] who testified that he was with Collins most of the day of the alleged offense.” Defendants contend that, “If Collins had separate counsel who did not have a duty to claim that the co-defendant was telling the truth, Collins’ independent counsel would have been able to argue that Collins was not associated with the co-defendant on the day of the alleged incidept and that defendant Taylor was mistaken or lying.” Defendants assert their attorney was therefore unable to present the “plausible defense” that Collins was nowhere near the area of the theft.
Our review of the record, however, does not support defendants’ claim. We note that while Massey (the victim) did not see Collins’ face, Massey’s description of the *653 cowboy hat and body build matched the description of Collins given by Mrs. Breaux and the police officers who clearly saw Taylor and Collins with the ladder shortly after the theft. Thus, there was strong, unbiased evidence connecting both defendants prior to defendants’ presentation of their case.
Defendants called three witnesses: Officer Britt (the other arresting officer) and the defendants. The essence of Britt’s testimony was that both defendants frequently drank together and had been drinking together on the day of the theft. His testimony linking the defendants was elicited by defendants’ attorney on direct examination and was apparently intended to show defendants were harmless drunks who hung around the French Quarter, but they did not steal the ladder or were too inebriated to form the intent to “permanently deprive the owner” of the ladder. Defendant Taylor testified on direct examination that he and Collins were drinking together but they did not steal the ladder.
Collins did not mention being with Taylor. It was not part of Taylor’s alibi to show he was with Collins that morning: that fact was established by the State’s witnesses and it would have been difficult for Taylor to deny it. Thus, it was not defense counsel’s dual representation which precluded him from arguing Collins was not in the area of the theft; rather, it was the obvious futility of such a claim since both men were known and seen by impartial eyewitnesses.
In State v. Morrow, 440 So.2d 98 (La. 1983), the court held that to decide if a severance should be granted, the reviewing court must determine: (1) if the possible defense (not raised) was “plausible” and (2) if the attorney was precluded from raising the defense out of loyalty to a co-defendant.
A similar argument was rejected in State v. Kahey, supra, at p. 484 which involved co-defendants charged with murdering their child. The analysis in Kahey applies here:
The defendants argue that it is “obvious” that a conflict of interest caused by the dual representation existed because (1) since each defendant testified in the case, each was denied effective cross-examination of the other, and (2) each defendant was limited to the development of a theory of his or her defense which would be compatible with the other. Applying the test we have outlined above for the determination of whether an ‘actual conflict of interest’ existed, we conclude that the defendants have failed to meet their burden.
The defense offered by both defendants in this case was that the child died from other causes and that their strict religious beliefs in discipline were the motivation for their mistreatment of the child, rather than a specific intent to kill him or to inflict great bodily harm. The defendants’ positions were compatible and entirely consistent, and they have not alleged antagonistic defenses. State v. Edwards, supra.
[[Image here]]
The defendant’s argument that effective cross-examination of the codefendant was denied and compatible defenses were thus demanded is an argument that can be made in any multiple representation case. State v. Ross, supra. The defendants have not distinguished the instant case by demonstrating the existence of a duty on the part of their attorney to take some action that would have been detrimental to one of the codefendants. Zuck v. Alabama, supra. The possibility that another approach should be used in a trial with better results to a defendant exists in every case and is far from making out a deprivation of a constitutional right. State v. Edwards, supra; United States v. Foster, 469 F.2d 1 (1st Cir. 1973). The defendants made no showing of how they would have benefited from another strategy. State v. Edwards, supra.
Defendants’ other contention regarding a conflict of interest is based on the greater amount of evidence against Taylor because *654 he was facially identified by the victim. That argument was rejected in State v. Edwards, supra:
The trial judge’s basis for finding a conflict of interest was the disparity of the evidence between the defendants. However, the mere fact that the evidence against one codefendant is stronger than that against the other does not indicate, much less demonstrate, the existence of a conflict of interest between the defendants. United States v. Gallagher, 437 F.2d 1191 (7th Cir.1971), cert. denied. Thus, the. trial judge’s reliance on the disparity of the evidence for finding a conflict of interest between the defendants was misplaced.
Thus, there was no conflict of interest between the co-defendants which precluded either from receiving effective assistance of counsel.
The convictions and sentences are AFFIRMED.
AFFIRMED.

. However, the motion to sever was only on behalf of Collins and defendants' brief refers only to Collins.