LOBRANO, Judge.
Defendants, James Kanupp and William Tiner, were charged by bill of information with the attempted armed robbery of Charles Hines, a violation of La.R.S. 14:(27)64.
On December 12, 1987, defendants were arraigned and pled not guilty. Defendants were tried together on November 9, 1987 and were found guilty as charged by a twelve member jury. On November 17, 1987, Kanupp was sentenced to serve twenty-five (25) years at hard labor without benefit of probation, parole or suspension of sentence; Tiner was sentenced to fifteen (15) years at hard labor without benefit of parole or suspension of sentence.
FACTS:
On December 26, 1986, Hines met Ka-nupp, who identified himself as “Robert” at a French Quarter bar. Hines bought Ka-nupp a drink and then the two men left the bar. They proceeded towards Hines’ apartment at 924 Ursuline Avenue. Kanupp asked if he could come in and have another drink. Hines invited him in and they each drank three martinis. Kanupp left Hines’ apartment around midnight to look for a friend he had been with earlier. Before leaving he told Hines that if he was unable to find his friend, he would return. Ka-nupp returned around 2:30 a.m. He spent the night at Hines’ apartment where they engaged in sexual activity. At 8:00 a.m., Hines awakened Kanupp. The two men had breakfast. Hines invited Kanupp to return to the apartment that afternoon. They then parted company.
Hines returned home around 2:00 p.m. Kanupp arrived about ten to fifteen minutes later accompanied by Tiner. He introduced Tiner to Hines as “Joe” or “Jack”. The trio sat in the bedroom watching a porno movie and drinking martinis. Hines went into the kitchen to fix another drink. When he returned, Kanupp placed a knife to his throat and ordered him not to move or make a sound. Tiner went behind Hines and instructed him to do as he was told. Kanupp then ordered Hines to lay face down on the bed. Tiner then said, “Yes, if that nigger moves, kill him.” Kanupp then told Tiner to look for something to gag Hines. Tiner took something from the chest of drawers. Just as Tiner was attempting to gag Hines, Hines pushed the knife away from his throat and yelled for his mother, who lived in the apartment on the other side, to bring a gun. Kanupp and Tiner became frightened and fled the apartment through the front door. Hines’ mother entered his apartment through the rear door. She was carrying a gun. Hines took the gun from his mother and ran after Kanupp and Tiner.
Defendants headed up Ursuline toward Burgundy and then onto Burgundy toward Canal Street. While chasing defendant down Burgundy, Hines came upon his neighbor, Michael Brown. He told Brown what had occurred and asked that he call the police. Brown instructed his wife to call the police then got on his bicycle and began to go after defendants who had turned down St. Phillip. Meanwhile, Hines had run back down Ursuline to Dauphine in an attempt to head off defendants. Brown stopped a police officer and explained what occurred pointing out Kanupp and Tiner.
Officer Edward Cooper responded to the call and proceeded to Bourbon Street where he saw Kanupp and Tiner. He detained them at Ursuline and Bourbon where Hines met him and identified both men as his assailants. Cooper then placed them under arrest. Cooper advised them of their rights and placed them in the back seat of his patrol ear. No weapon of any kind was found on either defendant. According to Cooper, while in the patrol car Kanupp stated that Tiner had nothing to do with the robbery and that it was he who tried to rob Hines. Cooper stated that Hines had a cut on his right hand which was bleeding. He also testified that he went to Hines’ apartment. He found no signs that a struggle had taken place or that the bedroom had been ransacked.
Hines testified that the only “struggle” was when he pushed the knife from his throat. He also stated that Tiner looked *451 through some drawers searching for something to gag him but as far as he knew defendants did not take anything of value from the apartment before they fled.
Tiner testified. Kanupp did not testify. Tiner stated that he and Kanupp, whom he knew as “Rusty”, met Hines around 1:00 a.m. on December 27th at a Bourbon Street bar. He stated that Kanupp and Hines spoke for awhile. Kanupp left Hines at about 2:00 a.m. Tiner stayed in the bar and then went back to his car where he fell asleep. Kanupp awakened him at 6:00 a.m. They then went to Hines’ apartment where they had several drinks. They remained there until 9:00 a.m. when Hines had to leave. Before leaving, Hines invited defendants to return to his apartment around 2:00 p.m. which they did. They all sat in the bedroom drinking and watching a porno movie. Tiner stated that Hines then made a sexual advance toward him which angered him. He stated that he pushed Hines to the floor and then he and Kanupp left the apartment. He testified that they headed down Urusline towards Bourbon Street where Officer Cooper stopped them, put them into his patrol car and drove them back to Hines’ apartment where Hines identified them. Tiner stated that Hines did not follow them. He further stated that he did not hear Kanupp tell Officer Cooper that he (Tiner) had nothing to do with the robbery and that it was Kanupp who intended to rob Hines.
Defendants appeal their convictions and sentences asserting the following assignments of error:
1) That they were denied effective assistance of counsel because only one attorney was appointed to represent both of them;
2) The state failed to prove beyond a reasonable doubt that they committed attempted armed robbery;
3) The trial court erred in imposing excessive sentences.
ASSIGNMENT OF ERROR 1:
Defendants assert the trial judge erred in appointing only one attorney to represent both of them when a conflict of interest existed concerning the statement by Kanupp to Officer Cooper which exculpated Tiner but incriminated Kanupp. Prior to trial defendants’ attorney moved to suppress this statement. The motion was denied. Defendants argue that Kanupp’s statement created divided loyalties in that it obligated their defense counsel to move to suppress the statement on Kanupps’ behalf but was obligated to Tiner to bring it before the jury. They assert this conflict of interest should have been apparent to the trial court and separate counsel should have been appointed. They argue that failure to appoint separate counsel resulted in ineffective assistance of counsel.
The issue of ineffective assistance of counsel is more properly raised in an application for post-conviction relief to be filed initially in the" trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Petta, 496 So.2d 390 (La.App. 4th Cir.1986). However, where the record on appeal discloses sufficient evidence upon which to make a determination of counsel’s effectiveness, a decision on the issue may be made in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Haywood, 516 So.2d 196 (La.App. 4th Cir.1987).
Kanupp argues that the conflict adversely affected his representation because defense counsel lacked the ability to plea bargain by arguing the relative roles and culpability of the two defendants. Tiner argues the conflict adversely affected his representation in that defense counsel had to attack the credibility of the statement on behalf of Kanupp while calling Tiner to testify consistent with the statement. In addition, Tiner argues that defense counsel was unable to argue that the statement, in conjunction with Tiner’s testimony, was the truth.
Regarding multiple representation, this Court in State v. Taylor, 449 So.2d 649 (La.App. 4th Cir.1984) stated:
“Representation of multiple defendants by one attorney does not violate federal or state constitutional rights to adequate *452 legal assistance unless such representation gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983); State v. Ross, 410 So.2d 1388 (La.1982). The test to be used by the reviewing court to ascertain whether joint representation has led to ineffective assistance of counsel is controlled by the time at which the claim of conflict is made. State v. Edwards, 430 So.2d 60 (La.1983); State v. Marshall, 414 So.2d 684 (La.1982), U.S. cert. den. 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).
In Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court ruled that, if a defendant makes a pretrial motion to sever and have separate counsel appointed, the trial court is required ‘either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel.’ If a conflict of interest is alleged after trial, a defendant ‘in order to establish a violation of the Sixth Amendment ... must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.’ Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), cited in State v. Edwards, 430 So.2d 60, 62 (La.1983).” At p. 651.
A review of the record shows insufficient evidence to support a claim of ineffective assistance of counsel. Nothing in the record shows that the trial court was ever made aware that there was indeed a conflict. No motion to sever or motion to withdraw was filed by defense counsel indicating that a conflict existed or that defense counsel perceived that a conflict existed. In addition, defendants have not shown how they would have benefited from different strategies. The mere possibility that a different approach could have produced better results does not establish the deprivation of a constitutional right. See, State v. Kahey, 436 So.2d 475 (La.1983).
In addition, the record before us fails to show in what manner the conflict adversely affected joint counsel’s defense. The jury had the benefit of Kanupp’s statement exculpating Tiner as testified to by Officer Cooper as well as Tiner’s testimony that Kanupp and he did not attempt to rob Hines. In addition, when questioned by defense counsel concerning Kanupp’s statement to Officer Cooper exculpating Tiner, Tiner responded:
“No Sir, I didn’t hear nothing like that.”
Thus, no showing has been made based on the record before us that a conflict existed, and thus we reject defendants’ arguments. At this point, defendants have failed to make a showing of “adverse performance” by defense counsel.
However, this ruling does not preclude subsequent consideration of this issue if additional evidence is presented during a hearing of an application for post conviction relief. See, C.Cr.P. Art. 924, et seq.
ASSIGNMENT OF ERROR 2:
Defendants assert there is insufficient evidence which proves beyond a reasonable doubt that they committed an attempted armed robbery of Charles Hines. They assert that a rational trier of fact could not have found Hines’ testimony credible since he had been drinking and no other evidence corroborated his testimony.
When assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306, 310 (La.1982).
Defendants were charged with attempted armed robbery, a violation of La.R.S. 14:(27)64. Attempted armed robbery is the specific intent to take something of value from another person or in his control by use of force or intimidation while armed with a dangerous weapon; and the perpetrator does or omits an act for the purpose of and tending directly toward the robbery. La.R.S. 14:(27)64; State v. Johnson, 466 So.2d 741 (La.App. 4th Cir.1985).
*453 Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendants guilty beyond a reasonable doubt of attempted armed robbery. Defendants assert that Hines’ testimony was not credible and should not have been believed because no corroborative evidence was presented by the state. They argue that Hines’ mother did not testify and no weapon was found and presented at trial.
Whether evidence is credible is not a determination appropriate for appellate review; evaluations of credibility are well within the province of the jury as trier-of-faet. State v. Bailey, 457 So.2d 94 (La.App. 4th Cir.1984); State v. Lee, 458 So.2d 533 (La.App. 4th Cir.1984). Additionally, the weapon used in a robbery does not have to be presented at trial to support a conviction. State v. Robinson, 461 So.2d 403 (La.App. 4th Cir.1984).
Hines testified that Kanupp held a knife to his throat, forced him to lie down on the bed and instructed Tiner to find something to gag him with. Tiner instructed Hines to do as he was told, searched in the drawers for something with which to gag Hines, told Kanupp to “kill that nigger if he moves” and told Hines, "we are going to clean out this whole damn place.” Hines testified that he sustained a cut to his right hand when he pushed the knife from his throat. This injury was corroborated by Officer Cooper’s testimony. Michael Brown corroborated Hines’ testimony that he chased defendants following the robbery attempt. Thus, the evidence was sufficient, when viewed in the light most favorable to the prosecution, to support a conviction of attempted armed robbery.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 3:
Defendants assert their sentences are excessive based on the trial court’s failure to consider the sentencing guidelines set forth in C.Cr.P. Art. 894.1.
The Louisiana Constitution prohibits the imposition of excessive punishment. Art. I, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment that is enforceable by this court on appellate review. State v. Cann, 471 So.2d 701 (La.1985); State v. Thomas, 447 So.2d 1053 (La.1984); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir.1986), writ den. 503 So.2d 13.
A sentence which appears to be severe is considered excessive and unconstitutional if it is “grossly out of proportion to the severity of the crime” or “is nothing more than the purposeless and needless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); Stave v. Telsee, 425 So.2d 1251 (La.1983).
The trial judge must articulate reasons for an apparently severe sentence tailoring it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981); State v. Francosi, supra. Code of Civil Procedure Art. 894.1 sets forth the criteria to be used by the trial court in its determination. The trial court need not articulate every circumstance cited, but it must indicate that it considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981). Not only the aggravating circumstances, but the mitigating circumstances as well must be considered, State v. Franks, 373 So.2d 1307 (La.1979) and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La.1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed on remand, 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
The sentencing transcript reflects the following colloquy prior to the court sentencing the defendants.
*454 THE COURT:
“All right. The Court adopts the verdicts of the jury of guilty as charged beyond a reasonable doubt by a vote of eleven to one in which the Court concurs as the factual basis for the imposition of sentence under 894.1, Paragraph A-l, 2, and 3.
Get their ages.”
“At this time the age, date of birth, and place of birth is taken by the Minute Clerk.”
THE COURT:
“What’s the priors on either one of these defendants?”
MR. DEGAN:
“Mr. Tiner has no prior convictions. Mr. Kanupp has several convictions from out of State: one been [sic] armed robbery from North Carolina, possession of marijuana — ”
THE COURT:
“What did he get for that?”
MR. DEGAN:
“Four years. Possession of marijuana
THE COURT:
“Possession of marijuana forget it, that’s a misdemeanor.”
MR. DEGAN:
“Also, what they call misdemeanor store break in, in North Carolina.”
THE COURT:
“And the other man has no prior?”
MR. DEGAN:
“No. No convictions.
THE COURT:
“And the facts also reflect, from the testimony of the victim, that the Defendant Kanupp was the one who was armed with the knife.
All right. You got everybody’s age?”
We are satisfied the trial court considered both aggravating and mitigating circumstances in sentencing defendants. Tiner had no prior record, and Kanupp’s prior marijuana conviction was a misdemeanor. Kanupp was the one who held the knife on the victim. We find no error in the sentences.
CONVICTION AND SENTENCE AFFIRMED.