791 So.2d 669 (2001)
STATE of Louisiana
v.
Darrell HOLMES, Barry Bowie & William Bailey.
No. 99-KA-0898.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 2000.
Opinions on Grant of Rehearing June 27, 2001.
*676 Harry F. Connick, District Attorney, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Yvonne Chalker, and William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant-Appellant, Barry Bowie & William Bailey.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant-Appellant, Barry Bowie (On Rehearing).
James H. Looney, Executive Director, Louisiana Appellate Project, Covington, LA, Counsel for Defendant-Appellant, Darrell Holmes.
Court composed of Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN, Judge MAX N. TOBIAS, Jr.
Opinions on Grant of Rehearing En Banc June 27, 2001.
BYRNES, Judge.
On January 23, 1998, the defendants, Darrell Holmes, Barry Bowie, and William Bailey, were charged by bill of information with possession of cocaine with intent to distribute, a violation of La. R.S. 40:967. Bailey was represented by Benny George. Bowie and Holmes were represented by Keith Lewis, OIDP. They were arraigned January 27, 1998 and pled not guilty. On February 27, 1998, the court found probable cause and denied a motion to suppress evidence. On May 12, 1998, a twelve member jury found the defendants guilty as charged.
Bailey was sentenced on June 1, 1998, to five years at hard labor.
The State filed a multiple bill as to Holmes. Holmes' motion for new trial and motion for post-verdict judgment of acquittal were denied November 13, 1998. He was sentenced that day to thirty years at hard labor without benefit of parole, probation, or suspension of sentence. He filed a motion to reconsider sentence which was denied. The court then found him to be a fourth offender, vacated its original sentence and re-sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
On January 5, 1999, Bowie was sentenced to five years at hard labor.

FACTS:
Officer William Gibson received an anonymous tip that crack cocaine was being distributed from 1927 Dumaine. On November 17, 1997, he staked out the address and saw one subject passing money through a window and another one acting as a lookout at the gate. The man at the window was given something by someone with a light skinned hand.[1] Gibson stopped the two men. The lookout alerted the other man who put something in his mouth. Gibson threw that man to the ground, and the man coughed up crack cocaine.
The next day, Gibson applied for a search warrant for the house. He executed it November 21, 1997. Officers broke down the door. On a table was a plastic bag containing thirty-three pieces of cocaine, cash, several cell phones and pagers. Bowie was standing to Gibson's right as he entered. Bailey was seated at the window where the transaction had taken place, and Holmes was seated on a weight bench to Bailey's right. The contraband was within an arm's reach of Bowie and Holmes. A juvenile was also present holding a two year old baby later found to be the child of Holmes. The officers ordered the men to *677 the floor. Bailey tossed a plastic bag under the table, and it was found to contain another thirty-three pieces of cocaine. Bowie was found in possession of $600.00 and a pager. Bailey had $242.00. The police confiscated a telephone bill, a social security card, a municipal court subpoena and a jury card in the name of Holmes. On cross, Gibson explained that he was not the first in the door, and that the defendants had already been handcuffed and were on the floor. He learned the defendants' positions from the officers assisting him.
Sheriff Mark Mornay said he helped execute the warrant. He confirmed Gibson's story as did Officers Arthur Powell and Joe Lainez.
Bowie said he received the money from his father and was going to the address to rent a room. Holmes had told him about the availability of a room, but he had never been there before. He said he possessed no drugs.
Holmes said he was the manager and caretaker of 1927 Dumaine. He admitted to possession of stolen property, theft, and forgery. He said he did not believe in drugs, and possessed none when he was arrested. He said Bailey and Bowie did not sell drugs, and that the policemen were liars.

ERRORS PATENT:
A review of the record for errors patent reveals that Holmes did not waive his right to a twenty-four hour delay between the denial of his motions for new trial and for judgment of acquittal and his sentencing. La.C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant's sentence if the defendant attacks his sentence, even though the defendant fails to specifically allege this failure as an error on appeal. However, the Fourth Circuit, in State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, in the present case where no error was raised as to the defendant's sentence, the failure of the trial court to observe the delay period is harmless error.
In addition, La. R.S. 40:967(B)(4)(b) provides that the first five years of a sentence for distribution of cocaine must be served without benefit of parole, probation, or suspension of sentence. Bowie and Bailey were not denied these benefits. However, this court will not correct an error patent favorable to the defendant where not raised by the State or the defense. State v. Fraser, 484 So.2d 122 (La.1986).
Lastly, Holmes and Bowie were both sentenced after their appeals had been granted. However, this court will not dismiss appeals where a sentence is imposed after defendant's motion for appeal is filed and granted. State v. Martin, 483 So.2d 1223 (La.App. 4 Cir.1986).

SUFFICIENCY OF EVIDENCE (BAILEY'S AND BOWIE'S ASSIGNMENTS OF ERROR ONE):
To evaluate whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Scott, 97-0028 (La.App. 4 Cir. 3/18/98), 709 So.2d 339. However, the reviewing court may not disregard this duty simply because the record contains evidence *678 that tends to support each fact necessary to constitute the crime. The reviewing court is not permitted to consider just the evidence most favorable to the prosecution, but it must consider the record as a whole. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Mussall, 523 So.2d 1305 (La.1988). "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Scott, 709 So.2d at 343 (quoting State v. Smith, 600 So.2d 1319, 1324 (La.1992)).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather it is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
In order to prove possession, the State is not obligated to prove actual possession, rather such conviction may be supported by a showing of constructive possession. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Jackson, 557 So.2d 1034 (La.App. 4 Cir.1990). The defendant's presence in the area where the drug is found, or the mere fact that the defendant knows the person in actual possession, is insufficient to prove constructive possession. Trahan; Jackson. However, a person may be considered to be in constructive possession if the illegal substance is subject to his dominion and control, or if he willfully and knowingly shares with another person in actual possession of a drug the right to control the drug. Trahan, supra. As this court noted in State v. Reaux, 539 So.2d 105, 108 (La.App. 4 Cir. 1989):
In determining whether defendant exercised the requisite dominion and control the jury may consider his knowledge that illegal drugs are in the area, his relationship with one found to be in actual possession, his access to the area where drugs were found, his physical proximity to the drugs and the evidence that the area was frequented by drug users.
In State v. Kingsmill, 514 So.2d 599 (La.App. 4 Cir.1987), cocaine and drug paraphernalia, including a scale, rolling papers, a razor, and numerous plastic bags, were found in an open cardboard box on a seat in a car occupied by the defendant and three other people. This court found sufficient evidence that the occupants of the car exercised dominion and control over the box and thus that they were all in constructive possession. In State v. Maresco, 495 So.2d 311 (La.App. 4 Cir.1986), writ den. 500 So.2d 419 (La.1987), this court upheld the defendant's conviction for possession of a large open box of marijuana sitting next to him in the apartment of another, but it also reversed his conviction for possession of other drugs found in a trunk in another room of the apartment.
*679 In State v. Williams, 594 So.2d 476 (La. App. 4 Cir.1992), the officers executed a search warrant at an apartment in a building. Upon entering, the officers ran through a kitchen and a living room containing no furniture, past an empty bedroom and into a second bedroom containing only a table, a chair and a television. The two defendants were in the second bedroom. On the table the officers observed a small pile of cocaine, several bags of cocaine, various paraphernalia, and $560.00 in small bills. Under the table the officers found a bottle of muriatic acid. One defendant was convicted of possession of cocaine with the intent to distribute and the other defendant was convicted of attempted possession of cocaine with the intent to distribute. This court found the evidence sufficient to support the convictions.
In State v. Brown, 96-2302 (La.App. 4 Cir. 4/9/97), 692 So.2d 1360, writ denied 97-1166 (La.11/7/97), 703 So.2d 1263, this court found that the State proved beyond a reasonable doubt that the defendant possessed cocaine. A surveillance was conducted at 2562 Alvar after the New Orleans Police Department received an anonymous tip that there was drug trafficking coming from that apartment. Officers learned from H.A.N.O that the apartment belonged to the defendant. When the officers searched the apartment, they concluded that the rear bedroom belonged to the defendant because of the women's clothes in the closet, receipts in her name, and other documents bearing the defendant's name. Further, the jacket that the defendant was observed wearing during the surveillance was found in the closet in the rear bedroom. Thirty-five pieces of cocaine were found in the jacket pocket. Even though the defendant was not present at the time of the execution of the search warrant, the court concluded that she exercised dominion and control over the drugs that were found in her bedroom closet within her jacket pocket.
To support a conviction for possession of a controlled dangerous substance with intent to distribute, the State must prove that the defendant knowingly and intentionally possessed the contraband and that he did so with the intent to distribute it. La. R.S. 40:967. Specific intent can be inferred from the circumstances of the transaction. State v. Moffett, 572 So.2d 705 (La.App. 4 Cir.1990). Certain factors are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include: (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether expert or other testimony established that the amount of drugs found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Hearold, 603 So.2d 731 (La.1992). The presence of large sums of cash is also considered circumstantial evidence of intent. State v. Jordan, 489 So.2d 994 (La. App. 1 Cir.1986). In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. Hearold, supra.
In Hearold, the Louisiana Supreme Court concluded that there were no circumstances which indicated that the defendant intended to distribute the one-eighth ounce of methamphetamine found in his possession. The Court noted that the drugs were found in one package rather *680 than in several individual packets. In addition, there were no scales, plastic baggies, other drug paraphernalia, weapons or large sum of cash were found in the vehicle.
In State v. Thomas, 543 So.2d 540 (La. App. 4 Cir.1989), writ denied, 548 So.2d 1229 (La.1989), this Court held that evidence of defendant's possession of thirty-three baggies of powder cocaine was sufficient to sustain defendant's conviction for possession of cocaine with the intent to distribute.
However, the First Circuit in State v. Fisher, 628 So.2d 1136 (La.App. 1 Cir. 1993), writs denied 94-0226 (La.5/20/94), 637 So.2d 474; 94-0321 (La.5/20/94), 637 So.2d 476, held that evidence of defendant's possession of twenty rocks of crack cocaine was not sufficient to support defendant's conviction for possession of cocaine with the intent to distribute. The cocaine was packaged in one single plastic bag. In modifying defendant's conviction to possession of cocaine, the appellate court noted that there was no evidence of drug paraphernalia or weapons found in the defendant's motel room. The court also discounted the officer's testimony about the quantity of cocaine involved in personal use versus distribution as the officer was not qualified as an expert.
In this case, Bailey and Bowie both allege insufficiency of the evidence. As to Bailey, he was seen in actual possession of the drug when he tossed a bag of cocaine when the officers entered the room. The evidence was therefore sufficient to prove that he was in actual possession of the drug. As to Bowie, he was standing within arm's length of a large amount of cocaine that was openly visible on the table. The pictures of the scene, which were admitted into evidence, show very clearly that the table was a high folding table set up like a desk in a room with little other furniture. The table was surrounded by chairs and was set so close to the window that the person seated behind the table barely had room to turn around to the hole in the window screen through which the drugs were sold. Money and drugs were clearly visible on the table. The evidence was therefore sufficient to support a conviction of possession of cocaine as to both defendants.
Addressing the intent to distribute element, the cocaine on the table amounted to thirty-three rocks. Bailey was in possession of another thirty-three. Both defendants were in possession of large amounts of cash: Bowie $600.00 and Bailey $242.00. Although Bowie testified that the money was to pay rent on a room in the building, a credibility determination is within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). The advertised rental rate for the building was "$55.00 and up" from which the jury could reasonably have doubted the veracity of Bowie's explanation for the possession of a sum of cash as large as $600.00. Moreover, the large number of small bills that made up the $600.00 sum (one $100.00 bill, fourteen $20.00 bills, seven $10.00 bills, seventeen $5.00 bills, and, by implication, sixty-five $1.00 bills) is typical of drug dealings. See State v. Williams, supra.
Additionally, Gibson had witnessed a drug transaction from the house a few days prior. A purchaser was stopped and found to be in possession of cocaine. Although all of the drugs were contained within two bags, there was cash out on the table along with cell phones and pagers. Bowie possessed a pager. The table around which the men stood, as described above, was very clearly set up to serve as a work space for the distribution of drugs. These facts support a finding of possession *681 with intent to distribute for both Bowie and Bailey.
These assignments are without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL (BOWIE'S ASSIGNMENT OF ERROR TWO AND HOLMES'S ASSIGNMENTS OF ERROR ONE AND TWO):
Bowie and Holmes argue that the trial court erred in appointing the same attorney and that they received ineffective assistance of counsel because of conflicting defenses. Specifically, each argues that he could have attempted to show that the cocaine belonged to the other.
A similar claim was raised in a recent case wherein this court reviewed the law on point. State v. Causey, 98-1946 (La. App. 4 Cir. 1/26/00), 752 So.2d 287. In that case, officers obtained a warrant for a residence. The defendant, Celestine, answered the door. Four men, one of whom was in a wheelchair, were in the front room. Causey went from the back room to the kitchen. The officers found a plate in the back room with rocks of cocaine on it. Marijuana was found in a woman's purse in a dresser drawer in that room. The purse contained belongings of Celestine. Celestine admitted the marijuana was hers and that she shared the room with Causey. Both were found in simple possession of cocaine and marijuana. This court stated:
Representation of more than one defendant by the same attorney does not violate federal or state constitutional rights to adequate legal assistance unless such representation gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983). When there has been no objection to the multiple representation prior to or during trial, the defendant must show that an actual conflict of interest adversely affected his attorney's performance in order to establish a claim of ineffective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Lobato, 603 So.2d 739 (La.1992). That is, the defendant must prove both an actual conflict of interest and prejudice. State v. Montegut, 618 So.2d 883 (La.App. 4 Cir.), writ denied, 626 So.2d 1177 (La.1993). An actual conflict exists if the defense attorney owes duties to a party whose interests are adverse to those of the defendant. The interests of the other party and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
Appellants argue that if they had been represented by different counsel, counsel for Celestine could have argued that she only resided there, and that it was Causey who was involved in the sale of cocaine hidden from view. As to the cocaine in plain view, she could have argued that Causey had just placed it there, and she did not know about it. Of course, Celestine directed the officers to marijuana in her dresser, so she had no defense to that misdemeanor charge. As to Causey, he could have argued that he was only visiting the residence and did not know anything about the drugs found inside the home.
Causey argues that his counsel could have demanded a separate trial, at which he could have objected to the incriminating hearsay statement of Celestine or compelled her to testify. Causey relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that, where a co defendant's confession was admitted at a joint trial, and the codefendant did not take the stand, the defendant was denied his constitutional right to confront his accuser.

*682 In the instant case, Celestine never confessed to the possession of cocaine, nor did she state that Causey possessed cocaine. Rather, she advised the officers that she had some marijuana in a dresser drawer in the back bedroom which she shared with Causey.
Neither of the appellants complained about the possible conflict which could arise from joint counsel until this appeal. Accordingly, they must now prove that counsel had a conflict, and that they were prejudiced by the conflict. [Emphasis added.]
As noted by the State, the contradictory defenses alleged by appellants on appeal are not plausible. Causey was observed by the officers coming from the room in which there was cocaine in plain view. A bag of cocaine was found outside the window of the bedroom that Causey exited. The bedroom had both male and female clothing in it. No trier of fact could reasonably believe that Causey was unaware of the cocaine in the room, even without Celestine's statement that Causey shared the room with her. Celestine, meanwhile, was tied to the evidence in the room by virtue of the purse in the dresser drawer, which held her identification. Besides the cocaine in plain view, and the bag of cocaine tossed out of the window of Celestine's bedroom, Marco and his handler found additional cocaine in a dresser drawer. Likewise, no trier of fact could reasonably believe that Causey had just put the cocaine there, in three different places, without her knowledge.
[A]ppellants were not prejudiced by their use of the same counsel at trial...
Id., pp. 5-6, 752 So.2d at 291-292.
In State v. Thomas, 99-1658 (La.App. 4 Cir. 12/22/99), 750 So.2d 1114, this court found no ineffective assistance of counsel where one counsel represented two of three brothers and another counsel represented the third. Neither attorney argued that his client or clients were innocent and the other attorney's guilty. All three brothers had guns in the prosecution for first degree murder; their defense did not involve denying that fact.
In this case, neither of the defendants complained about the possible conflict that could arise from joint counsel until this appeal. Accordingly, they must now prove that counsel had a conflict, and that they were prejudiced by the conflict. Causey, supra. The contradictory defenses alleged by defendants on appeal are not plausible. Both of them took the stand. Bowie said that he had just arrived at the residence when the police arrived, had never been there, knew nothing about the drugs, had never done drugs, and did not see Bailey holding drugs or throwing down drugs the entire time he was there. Holmes said that he had just arrived at the house after picking up his daughter. He was the apartment manager or caretaker. He said he did not believe in drugs and that he did not know if either Bailey or Bowie possessed drugs. Appellate counsel for each of the defendants now argues that if each defendant had separate counsel, each defendant could have established that the other possessed the drugs. However, each defendant testified that he knew nothing about the drugs, and in fact had never seen the drugs. In effect, the defendants argue that since they couldn't persuade the jury to believe one story, they should now be given the chance to try out another, regardless of the fact that to do so they must totally contradict their earlier sworn testimony. The argument implies that the purpose of separate attorneys is to suggest to the defendants a version of events most likely to benefit their case rather than to urge them to either tell the truth or assert their Fifth Amendment *683 right to remain silent. It is one thing to suggest that separate attorneys might adopt a different trial strategy that might be of greater benefit to one or more of the defendants. It is quite another thing, and an unacceptable one at that, to suggest that had defendants had separate attorneys they might have testified differently. In essence, the defendants argue that they lied at trial and that this Court should give them relief for having done so, or that they told the truth at trial, but now want this Court to give them a chance to lie.
There was no conflict between the defenses; the defenses were in fact mutually supportive. Neither man knew to whom the drugs belonged.
This assignment is without merit.

HOLMES'S PRO SE ASSIGNMENTS OF ERROR ONE AND TWO:
Holmes argues that there was not probable cause for the issuance of the warrant, and that the motion to suppress was incorrectly denied.
LSA-C.Cr.P. article 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." The Louisiana Supreme Court has held that:
Probable cause exists when the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched.
State v. Duncan, 420 So.2d 1105, 1108 (La.1982). See also State v. Roebuck, 530 So.2d 1242 (La.App. 4 Cir.1988), writ den. 531 So.2d 764 (La.1988); State v. Scott, 499 So.2d 1248 (La.App. 4 Cir.1986). The facts which form the basis for probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan, supra; Roebuck, supra. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480 (La.1984), cert. den. Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); State v. Hernandez, 513 So.2d 312 (La.App. 4 Cir.1987), writ den. 516 So.2d 130 (La.1987).
In its review of a magistrate's finding of probable cause, the reviewing court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate:
[T]o make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed."
Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 537 (1983), (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); See also Manso, supra; Roebuck, supra.
In this case, Gibson's affidavit states that he received information that cocaine was being sold at 1927 Dumaine by "Darryl", a black male, six feet tall, two hundred pounds, twenty-eight years old. Gibson went to the address, saw money exchanged for an object he recognized to be crack through a hole in the screen, stopped the man holding the cocaine, and found the purchased object to indeed look *684 like cocaine. Gibson could see that a six foot tall, two hundred pound black male appearing to be twenty-eight, was standing inside the house. These facts clearly establish probable cause for the issuance of a warrant. Accordingly, we find no merit in defendant's arguments relative to probable cause.
Within that section of his pro se brief nominally devoted to the issue of probable cause, the defendant also raised the issue of whether the search warrant described the premises to be searched with sufficient particularity. A search warrant must particularly describe the place to be searched. U.S. Constitution, Amendment IV; Louisiana Constitution of 1974, Article I § 5; La.C.Cr.P. Article 162. The description in a search warrant application is sufficient if the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises. State v. Korman, 379 So.2d 1061 (La.1980); State v. Petta, 354 So.2d 563 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977). A discrepancy between the location described in the warrant and the location searched will generally not invalidate the search warrant. See State v. Korman, supra; State v. Ventry, 439 So.2d 1144 (La.App. 4 Cir.1983), writ den. 443 So.2d 589 (La.1983). However, if police officers knowingly search an entirely different premises from that described in the warrant, the evidence seized will be suppressed because the warrant did not particularly describe the place to be searched. State v. Manzella, 392 So.2d 403 (La.1980).
In State v. Diggs, 98-0964 (La.App. 4 Cir. 6/24/98), 715 So.2d 692, writ den. 98-2647 (La.12/11/98), 730 So.2d 462, the officers learned from a tip of drug sales from 2614½ Louisiana Avenue. The officers set up a surveillance of the building and saw various transactions between pedestrians and a man who would appear on the balcony on the right-hand side of the building. The officers obtained a warrant listing that address, and they actually watched a similar transaction just prior to executing the warrant. However, as they executed the warrant, they learned the building was a four-plex, and the apartment from which the deals were being made was really 2214½ Louisiana Avenue. The trial court suppressed the evidence due to the discrepancy of the addresses, but on review this court reversed. This court noted that the affidavit adequately described the building to be searched, including the reference to the upper right hand apartment. In addition, the officer who conducted the surveillance and prepared the warrant was also present when the warrant was executed. Lastly, the officers watched a further transaction involving the apartment just prior to executing the warrant.
Likewise, in State v. Sterling, 99-2598 (La.4/25/00), 759 So.2d 60, the informant stated "Bam" was selling drugs from 3024 Wall Boulevard. The officers set up a surveillance wherein they saw a man fitting "Bam's" description conducting suspected drug transactions from three different doors of the building: the front door, the lower rear door, and the upper rear door. The officers obtained a warrant to search the residence, but when they executed the warrant, they learned that the address given to them, which was the only one visible on the building, really belonged to an upstairs apartment, which was reached through the front door and the upper door in the rear. Another apartment, located on the lower floor, had access only through the lower rear door, and its address was 3022. When the officers went to the upstairs apartment, they were told that "Bam" lived in the downstairs apartment. The officers then went to the *685 downstairs apartment and searched it. The trial court suppressed evidence based upon the discrepancy in the addresses, and on review this court in an unpublished disposition denied writs. State v. Sterling, 99-1217 (La.App. 4 Cir. 8/2/99), unpub. However, the Supreme Court reversed. The Court noted that there was no question that the officers believed the building contained only one residence and that they intended for the warrant to allow them to search the entire building. The Court stated:
In these circumstances, the validity of the search turns on the manner in which the officers execute the warrant "based on the information available as the search proceeds .... recogniz[ing] the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants."
Sterling, 99-2598 p. 4, 759 So.2d at 62 (citing Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). The Court noted that the defendant's movements between the upstairs and downstairs apartments reasonably led the officers to believe the building contained only one residence, and it further noted that the officers searched only the downstairs apartment once they learned that the suspect lived there.
In State v. Smith, 397 So.2d 1326 (La. 1981), a search warrant was issued for a residence located at 1821 Carondelet Street. The warrant application described the residence in greater detail, including a picture window on the right side of the front door and a white column bearing municipal number 1821 to the left of the front door. The warrant application also contained the information that no apartment number was available, and the structure contained both an upstairs and a downstairs apartment. The police executed the search warrant and searched the apartment which had a front door in the location precisely described in the warrant application. The officers later learned that this apartment had a separate municipal address, 1819 Carondelet Street. On appeal, the Supreme Court affirmed the trial court's refusal to suppress the evidence. The court noted:
The object of the particularity requirement is to prevent the search of the wrong premises. As this Court said in State v. Cobbs, supra [350 So.2d 168 (La.1977) ] at 171:
"* * * If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. * * *"
Hence, "a minor error in a portion of the description of the premises to be searched does not invalidate the search." State v. Korman, 379 So.2d 1061, 1063 (La.1980)....
State v. Smith, 397 So.2d at 1328.
The Court in Smith relied on State v. Hysell, 364 So.2d 1300 (La.1978), in which the search warrant failed to indicate which apartment in a two-apartment building was the object of the search. However, the affidavit in support of the warrant provided a detailed description, specifying that the apartment was on the east side above a beauty salon closest to the street. The court found that the description was sufficient to insure that the police would not search the wrong apartment.
The Smith court distinguished State v. Manzella, 392 So.2d 403 (La.1980), in which police officers, acting on information from a named informant, obtained a search warrant for 6176 Pontchartrain Boulevard. The application for the warrant described *686 the premises to be searched as a "one-story, brick frame, double residence." While executing the warrant, the officers rang the doorbell at the gate with the mailbox marked 6176. The woman who answered was the defendant's sister. When asked whether it was the residence of Blaise Manzella, she informed the officers that the defendant lived in the other half of the house (6178 Pontchartrain Boulevard). The police then executed the search warrant at 6178 Pontchartrain Boulevard. On review, the Court concluded that the apartment which was searched by the police was not particularly described in the warrant:
In the case before us, unlike Petta [State v. Petta, 354 So.2d 563 (La.1978) ] and Alexander [State v. Alexander, 337 So.2d 1111 (La.1976) ], we have a warrant for an actual address. Unlike the warrant in Korman, this warrant is not for the only complex apartment bearing the described number although naming the wrong building of the complex. Indeed, police were informed that defendant Manzella lived in the very apartment they sought to search and their information was erroneous.
The apartment which was searched by the police was not "particularly described" in the warrant. In fact, another apartment, not defendant's, was so particularly described. The description employed would not have prevented the search of the wrong premises; rather, the description would have facilitated [the] search of the wrong premises. That 6176 Pontchartrain was not searched was due to the lucky happenstance that defendant's sister answered the bell at 6176 Pontchartrain Boulevard and informed police that defendant lived at 6178 rather than 6176.
Manzella, 392 So.2d at 405-06.
The holdings of State v. Alexander, 337 So.2d 1111 (La.1976); State v. Petta, 354 So.2d 563 (La.1978); State v. Johnson, 534 So.2d 1322 (La.App. 4 Cir. 1988) writ den. State v. Willis, 540 So.2d 326 (La. 1989), and State v. Ventry, 439 So.2d 1144 (La.App. 4 Cir.1983), writ den. 443 So.2d 589 (La.1983), appear to support the State's argument. In Alexander, the warrant affidavit listed the address to be searched as 243 Pearl Street and described the house as being near a church and belonging to the defendant's father, who was the minister at the church. The actual municipal address, which was not marked on the house, was 245 Pearl Street, which was also the address of the church. The house was located behind and to the side of the church. In addition, there was no indication that any building was numbered 243 Pearl. The Court upheld the search pursuant to the warrant, finding that the description of the location of the house was sufficient to describe the residence which was searched.
Likewise, in Petta, supra, the warrant was issued for 1433 Crete Street and fully described the residence to be searched. However, the residence did not have a municipal address on it, and the actual address of the house was 1435. On review, the Court noted that the house was located next to an alleyway, on the other side of which was 1431 Crete, and that there was no address of 1433 Crete. The Court upheld the search, noting that the description given in the affidavit adequately described the residence which the officers searched.
In Johnson, supra, cited by the State, a search warrant authorized the search of 70001 Bundy Road, Apartment E-15. The location actually searched was 7001 Bundy Road, Apartment E-15. This Court upheld the search, finding "there was very little, if any possibility that the wrong premises would be searched. The typographical error *687 of an additional `O' in the address does not invalidate the warrant." Johnson, 534 So.2d at 1326. In Johnson, the police officer obtained and executed the warrant after personally observing the premises, setting up a surveillance, and verifying that the defendant resided there.
In Ventry, supra, the affidavit listed a pool hall at 1918 St. Andrew Street, and specified that drugs could be found in the "manager's office". The officers executed the warrant and seized evidence from the manager's office. The defendant sought to suppress the evidence seized from the office because it was actually located in the building next to but attached to 1918, and that building was actually 1920 St. Andrew. This court rejected the argument, noting that the manager's office was accessible through the pool hall at 1918 St. Andrew, and the officers had no reason to believe it was actually located in a different building, the front of which in any event did not have an address. This court upheld the search, noting that "the officers did not knowingly search a municipal address not specifically designated in the warrant." Ventry, 439 So.2d at 1146.
In this case, the warrant was executed by the affiant. He observed the transaction, and knew the place that was intended to be searched, i.e., the room on the front of the building containing the first window onto the alley. There is no indication that the warrant was intended for other rooms containing windows on the same alley as the defendant argues. Accordingly, we find no merit in the defendant's contentions regarding the defective nature of the search warrant.
The defendant contends that the affidavit contained intentional misrepresentations and inaccurate statements.
The Louisiana Supreme Court in State v. Rey, 351 So.2d 489, 491-492 (La. 1977), discussed the approach to be taken when an application for a search warrant contains intentional misrepresentations or inaccurate statements:
Because the invasion of home and privacy cannot be justified by misrepresentations, and in order to insure that the magistrate, and not the affiant, determines probable cause, this court has recognized on numerous occasions the defendant's right to traverse the allegations made by the affiant. [Citations omitted]. We have held that minor inaccuracies in the affidavit may not affect the validity of the search warrant (e.g. State v. Thomas, 329 So.2d 704 (La. 1976)); State v. Chaffin, 324 So.2d 369 (La.197[5])[,cert. denied, Chaffin v. Louisiana, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976)].
The Fifth Circuit Court of Appeals was faced with this problem in U.S. v. Thomas, 489 F.2d 664 (5th Cir.1973), cert. denied, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). That court noted that when faced with an affidavit containing inaccurate statements the preferred approach is to excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. If, however, the misrepresentations were intentionally made, a different result is required. Because these distorted statements constitute a fraud upon the courts and represent impermissible overreaching by the government, a warrant based on an affidavit containing intentional misrepresentations must be quashed.
We are in agreement with the approach described by the Fifth Circuit and adopt it as our own.
In this context, "intentional" means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526 (La.1978).
*688 There is no indication that Gibson made intentional misrepresentations or inaccurate statements in the affidavit supporting the warrant. The trial court, therefore, did not err in finding probable cause.
The defendant repeats some arguments in assignment of error two raised in assignment of error one. He styles the assignment as the trial court having erred in having denied the motion to suppress instead of the trial court having erred in finding probable cause. He argues that there existed inconsistencies in testimony at the motion to suppress, and that he should have been afforded a transcript so that he could have argued the inconsistencies. There were no inconsistencies.[2] There was, however, additional testimony: at the beginning of the hearing December 2, 1997, Gibson testified that he sent a confidential informant into the residence immediately before the warrant was executed, and that the informant made a buy which Gibson confirmed. As such, the additional testimony at the hearing further supported a finding of probable cause. The trial court did not err in denying the motion to suppress.
In connection with his first pro se assignment of error the defendant also complains about the failure of the prosecution to furnish him with the name of the confidential informant. This issue was not raised in the trial court. Moreover, the burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. State v. Davis, 411 So.2d 434, 436 (La. 1982). The defendant has made no attempt to show any such exceptional circumstances.
These assignments are without merit.

HOLMES'S PRO SE ASSIGNMENT OF ERROR THREE:
The defendant argues that the prosecutor made improper remarks. Specifically, he complains that the trial court asked, "Okay now sir when you don't believe in drugs you are a convicted felon for burglary of a pharmacy?" The defendant responded, "It wasn't a pharmacy." The defendant did not object at that time and may not raise the issue for the first time on appeal. La.C.Cr.P. art. 841. Furthermore, the defendant testified during direct that he did not believe in drugs. Thus, the prosecutor was free to cross-examine him on his drug habits and on his criminal record. La. C.E. art. 404.
The defendant argues the prosecutor knew he was innocent and that he tampered with the evidence and presented false testimony. There is no evidence in the record to support this assertion. The defendant was free to cross-examine, and did fully cross-examine the witnesses. This assignment of error has no merit.

HOLMES'S PRO SE ASSIGNMENT OF ERROR FOUR:
The defendant argues insufficient evidence. The law is set out above.
Gibson received evidence from an informant that "Darryl" was selling drugs from the house. Gibson witnessed a transaction. The seller had a hand the complexion of the defendant's. "Darryl" *689 was described as a 6', two hundred pound, twenty-eight year old black man. Gibson saw a person matching that description inside the house immediately after the transaction was completed and the purchaser was found in possession of cocaine. Cocaine and items commonly used in cocaine transactions were in plain view on a table near to the defendant when the warrant was executed. Documents were found in the defendant's name with the address of the house on them. These facts are clearly sufficient to support the conviction. This assignment of error has no merit.

HOLMES'S PRO SE ASSIGNMENT OF ERROR FIVE:
The defendant argues the trial court erred in denying his motion for a new trial. He argues the trial court should have given reasons why it denied the motion.
The basis of the motion was that the verdict was contrary to the law and the evidence. That issue is reviewed in the above assignment. The trial court was under no obligation to give reasons for its denial of the motion.
This assignment is without merit.

HOLMES'S PRO SE ASSIGNMENT OF ERROR SIX:
The defendant argues ineffective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir. 1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 687, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, as "opinions may differ on the advisability of ... a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level *690 of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La. 1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The defendant argues counsel was ineffective because he did not point out inconsistencies in Gibson's testimony and did not point out false statements in the police report or the affidavit supporting the warrant. As discussed above, there were no inconsistencies or false statements. Gibson was effectively cross-examined.
The defendant also argues the conflict of interests issue already raised above.
He argues that counsel did not fully investigate the scene to show that Gibson could not have been telling the truth. The jury viewed photographs of the scene, studied Gibson's demeanor, and had the benefit of extensive cross-examination in making a determination of his credibility. The defendant argues that counsel should have established that there were other rooms for rent in the building, and that it was not clear that the transaction occurred at Holmes's window. The jury heard evidence that the building was a rooming house and witnessed the pictures of the scene. The defendant argues that counsel should have called more witnesses, namely the landlord and workers who were working on the building. The defendant makes no showing that these witnesses would have testified as he alleges they might have, i.e., that there were no drugs on the scene.
He argues the prosecutor made an improper remark in referring to a crime against a pharmacy that did not occur. As set out above, the defendant took the stand. The State was therefore entitled to go into his criminal record, and the defendant was free to admit or deny the record.
The defendant points out that counsel has been disbarred. In re Lewis, 98-2825 (La.1/29/99), 728 So.2d 846. Counsel was disbarred because he forged checks and co-mingled funds in civil cases he was handling. Those issues did not effect his trial expertise in general nor his representation of the defendant in this case.
This assignment is without merit.

HOLMES' SUPPLEMENTAL ASSIGNMENT OF ERROR
In a supplemental assignment of error, Holmes argues that a court reporter omitted crucial excerpts of transcripts and added others. There is no evidence to support the defendant's assertions; and the court reporters signed all transcripts, attesting to their accuracy.
The defendant again argues inconsistencies in Gibson's testimony. As set out in the original memorandum, there were no inconsistencies; and Gibson was effectively cross-examined.
This assignment is without merit.
For the foregoing reasons, the convictions and sentences of all defendants are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, Sr., Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., Judge DAVID S. GORBATY.

*691 ON APPLICATION FOR REHEARING
BYRNES, Chief Judge.
Defendants Holmes and Bowie applied for rehearing. The arguments they raise in connection with insufficiency of evidence and ineffective assistance of counsel were adequately addressed in the original opinion of this Court.
However, they also raise a new issue non-compliance with La.C.Cr.P. art. 517. When there is joint representation of two or more defendants, La.C.Cr.P. art. 517 requires the judge to "inquire with respect to such joint representation and shall advise each defendant on the record of his right to separate representation." (Emphasis added.)
There is no evidence on or off the record to show that this was ever done. The State was given a chance to supplement the record with any such evidence. The State failed to do so. Moreover, the State does not even contend that the trial court advised the defendants of their right to separate representation.
Accordingly, we find that the trial court failed to comply with the requirements of La.C.Cr.P. art. 517, and that this failure constitutes error. However, the question of whether an error of this type is subject to harmless error analysis appears to be res nova. Accordingly, the question was submitted to the Court for consideration en banc. A majority of the Court voted en banc to treat the matter as harmless error under the facts of this case.
The only case interpreting La.C.Cr.P. art. 517 is State v. Morris, 98-2684 (La. App. 4 Cir. 3/10/99), 729 So.2d 1141, writ not considered 99-1025 (La.4/30/99, 741 So.2d 6). The defendants contend that Morris mandates reversal and does not permit a harmless error analysis. Morris does not hold that or imply that. The facts in Morris are very different from those found in the instant case. In Morris this Court did nothing more than find that the trial court did not abuse its discretion in allowing a defendant to withdraw a guilty plea where there was a failure to comply with the requirements of La. C.Cr.P. art. 517. Where this Court adopts an abuse of discretion standard in Morris we necessarily infer that the failure to comply with La.C.Cr.P. art. 517 is not, ipso facto, fatal error. By applying an abuse of discretion standard in Morris, this Court implied that there would be instances in which, in the exercise of the trial court's discretion, a failure to comply with La. C.Cr.P. art. 517 would not result in a favorable outcome for the defendant, which is the same thing as saying that the error could be harmless depending on the facts.
Multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution unless it gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475, 484 (La.1983). The jurisprudence has typically viewed conflict claims as a species of ineffectiveness claims. State v. Holder, 99-1747 (La.App. 3 Cir. 10/11/00), 771 So.2d 780. Where there has been no objection to the multiple representation prior to or during trial, the defendant must establish that an actual conflict of interest adversely affected his counsel's performance in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment. State v. Lobato, 621 So.2d 103 (La.App. 2 Cir.1993). A reviewing court cannot presume that joint representation and the possibility of a conflict of interest has resulted in ineffective assistance of counsel. Id.; Kahey, supra. Actual conflicts of interest that actually affected counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual *692 conflict. Lobato, supra; United States v. Roth, 860 F.2d 1382 (7 Cir.1988), cert. den. 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989).
Lobato, supra, demonstrates the type of specificity necessary to establish the existence of a conflict prejudicial to the defendant when the issue is raised for the first time on appeal:
Defendant's assertions that he was denied effective assistance of counsel are purely speculative and do not rise to the level of showing an actual conflict of interest. Defendant's allegation that the conflict of interest prevented Mr. Jefferson from calling Phillips as a witness is pure conjecture. There is no indication that Phillips would have waived his Fifth Amendment right against self-incrimination. Rather, from Mr. Jefferson's testimony regarding Phillips's reluctance to testify, such a waiver would appear unlikely. Importantly, Mr. Jefferson stated that Phillips and Lobato gave him the same story. The record does not indicate that Phillips would have testified that Lobato was an innocent dupe to Phillips's drug kingpin. A defendant claiming that a conflict of interest resulted in his counsel's failure to call a witness must do more than point to a witness's failure to testify, the defendant must specifically identify what testimony was denied to the jury and how this adversely affected the defendant. United States v. Abner, 825 F.2d 835 (5 Cir.1987).
By analogy, the suggestions of conflict in the instant case are even more speculative, vague and implausible than those rejected by the court in Lobato. The mere "possibility" of conflict is insufficient to impugn a criminal conviction; the defendant must show that his counsel actively represented conflicting interests. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
State v. Morrow, 440 So.2d 98 (La.1983), cited by the majority, had facts establishing a potential conflict totally distinguishable from the instant case:
At the postconviction hearing, relator testified without contradiction that he told his trial counsel he was waiting for a ride home and did not initially know of the kidnapping. Yet the trial attorney did not present evidence or argument on this point even in the penalty phase, presumably because he could not do so without emphasizing Burge's [ (the jointly represented co-defendant) ] guilt.
The victim and the witness to the incident in the parking lot clearly testified that Burge alone performed the initial abduction. Nevertheless, relator's trial counsel failed to emphasize to the jury, through cross-examination and argument, that relator did not participate in the initial abduction. More importantly, counsel never emphasized relator's lesser overall culpability, not even during the penalty phase when the jury was considering the death penalty for both defendants. The state argues that the facts establishing relator's lesser culpability were before the jury, but that argument underplays the role of advocacy. The importance of emphasizing relator's lesser role is best illustrated by the fact that this court on original appeal mistakenly stated, in reciting the undisputed facts, that "defendants placed a sharp object at the throat of a female shopper as she returned to her car" and "[t]he two then forced the woman into the passenger side of the vehicle and drove her to a deserted area, where she was beaten and raped". (Emphasis supplied.)
Trial counsel also did not follow up on Cantrell's statement at the original trial *693 that relator told him he was waiting "around the side of the building wanting to go home" after they couldn't cash the check.... Neither did the attorney argue that point to the jury. Moreover, Cantrell later testified at the postconviction hearing that Burge told him "not to get mad at [relator] for anything that had happened, because [Burge] had forced [relator] to go with him". Cantrell further testified that he had told relator's attorney that Burge had pulled a knife on relator and forced him to go to the store, but the attorney instructed Cantrell not to mention this. The trial attorney was not asked to confirm or deny the testimony, which therefore stands uncontradicted.
Relator's sister testified at the postconviction hearing that Burge, who had just gotten out of jail, had pulled a knife on relator shortly before they left for the store, but that relator's attorney instructed her not to say this in court. The district attorney also did not question the trial attorney on this point.
Additionally, since relator had no prior record and was clearly the less culpable of the two defendants, there was no compelling reason for him not to testify, except that his testimony would have drawn the jury's attention, directly or indirectly, to Burge's greater culpability. Yet relator's trial counsel never advised him nor discussed with him the potential advantages of taking the stand, presumably because of the difficulty in "serving two masters".
Finally, relator's attorney presented no argument to the jury, even in the penalty phase, which pointed out that relator may have been innocent or at least guilty only of simple kidnapping. Clearly, the conflict of interest deprived relator of a meaningful chance to have the jury consider his lesser culpability as to the aggravated kidnapping charges. The fact that the jury on its own recognized a difference in culpability between a defendant who used a knife to commit rape and one who simply followed the aggressive leader suggests that the jury may have recognized a difference in culpability for the kidnapping, if the pertinent facts had been argued by an attorney solely interested in relator's welfare.
The representation as to the intoxication defense was vigorous and well presented. Nevertheless, there was another plausible defense that could not be presented because of an actual conflict of interest. Significantly, the two defenses were not inconsistent, but were supplemental, since a conflict-free attorney could have argued that relator was so intoxicated that he could not form the specific intent required for aggravated kidnapping (or could not discern right from wrong as to either offense), or alternatively that relator did not plan the kidnapping and did not realize in his dazed condition that a kidnapping had occurred until Burge had already seized the victim and carried her away.
We conclude that the evidence and argument, which relator's attorney was precluded from presenting because of a conflict of interest, might have influenced twelve reasonable jurors, under the overall circumstances of this case, to return a different verdict (such as simple kidnapping, with a five-year maximum sentence). At the very least, relator was entitled to have a jury (rather than an appellate court) make this determination on the basis of evidence and argument forcefully presented by an advocate solely interested in his welfare.
The Official Comments under LSA C.Cr.P. art. 517 acknowledge that it is based upon, although not identical to, F.R.Cr.P. 44(c). Failure to advise the defendants pursuant to Rule 44(c) will not automatically require *694 a reversal of a conviction. See United States v. Holley, 826 F.2d 331 (5 Cir.1987), cert. den. 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422, citing United States v. Benavidez, 664 F.2d 1255, (5 Cir.1982), cert. den. 457 U.S. 1135, 102 S.Ct. 2963:

Benavidez instructs that the goal of Rule 44(c) is to prevent conflicts that may be associated with joint representation. "The inquiry and advice provided by that rule are not ends in themselves; they are a procedure designed to prevent conflicts of interest." (Citation omitted.) Evaluating the trial court's compliance with Rule 44(c) thus cannot be divorced from a showing that a defendant has been denied his sixth amendment right to effective counsel. "If there is no actual conflict, then the rule's purpose will not be served by reversal of a conviction." Benavidez, 664 F.2d at 1258.
Holley, 826 F.2d at 333. The court in Holley further stated that although it did "not condone the trial court's omission of its duty, ... careful government counsel should ordinarily wish to draw a court's attention to Rule 44(c)." Id. this language confirms that Rule 44(c), and by analogy Article 517, are strictly procedural vehicles to lessen the possibility that after conviction a jointly-represented defendant will assert a claim that his counsel was not conflict-free and thus was ineffective. Failure to have advised the defendant will not automatically result in the success of such a claim, but arguably having advised the defendant will make it less likely that such a claim will be raised.
Accordingly, the failure of the trial court to inquire into the joint representation on the record does not rise to the level of a denial of a constitutional right. Moreover, because no objection was made prior to trial and no motion for separate counsel was made because of counsel's perceived conflict, the violation was waived. LSA-C.Cr.P. art. 841A.
We herewith incorporate by reference the analysis from our original opinion on the issue of joint representation which leads us to conclude that the failure to comply with La.C.Cr.P. art. 517 is harmless.
To recap the key factors in the instant case:
1. A violation of La.C.Cr.P. art. 517 is not reversible error per se. La. C.Cr.P. art. 517 does not create a constitutional right. It is subject to harmless error review.
2. The defendants raised the issue of possible conflict for the first time on this appeal. The burden is on them to prove that a conflict existed and that they were prejudiced as a result.
3. Conflict claims are a species of ineffectiveness claims subject to harmless error review.
In the instant case, as a matter of law and fact, including the testimony of the defendants, the failure to comply with the technical requirements of La.C.Cr.P. art. 517 was harmless.
For the foregoing reasons, the original opinion of this Court is affirmed.
AFFIRMED.
TOBIAS, J., PLOTKIN, J., and GORBATY, J., dissenting with written reasons.
TOBIAS, PLOTKIN, and GORBATY, JJ., dissenting.
The arguments that the defendants, Darrell Holmes and Barry Bowie, raised in connection with insufficiency of evidence and ineffective assistance of counsel were correctly addressed in the original opinion of 8 November 2000.
*695 In the applications for rehearing, the defendants argue that the trial court erred by appointing a single attorney to represent both of them because of the differences in their defenses and past criminal records without following La.C.Cr.P. art. 517. In the original briefs to this Court, the defendants failed to make an argument respecting La. C. Cr. P. art. 517, which became law by Act 889 of 1997. Article 517 provides:
A. Whenever two or more defendants have been jointly charged in a single indictment or have moved to consolidate their indictments for a joint trial, and are represented by the same retained or appointed counsel or by retained or appointed counsel who are associated in the practice of law, the court shall inquire with respect to such joint representation and shall advise each defendant on the record of his right to separate representation.
B. Unless it appears that there is good cause to believe that no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel. [Emphasis supplied.]
The minute entry of 13 February 1998 states that all defendants were present in court on that date and the court appointed Keith Lewis of the OIDP to represent Holmes and Bowie. The transcript of that hearing confirms the minute entry. No motion to sever was ever filed by defense counsel. The remainder of the record before us is silent as to whether either defendant was advised of his La.C.Cr.P. art. 517 rights. The State was given an opportunity to argue that the defendants were advised of their Article 517 rights at that 13 February 1998 hearing or at another time. The State concedes in brief that the defendants were not advised on the record of their right to separate counsel. Accordingly, we conclude that defendants were not advised on the record of that right.
"The members of the Legislature are presumed to know the law, and not to intend to enact legislation that would be manifestly in contravention of constitutional prohibitions, and of no legal force or effect whatever." State ex rel. Varnado v. Louisiana Highway Commission, 147 So. 361, 177 La. 1 (La.1933).
The Legislature added Article 517 to our law in 1997. They obviously had good reasons to add the provision to our statutory scheme.
The official comments to the article indicate that the intent was to mimic F.R.Cr.P. 44(c). Concededly, the language is "almost verbatim" that of Rule 44(c). But Article 517 contains a major difference. Article 517 requires the trial court on the record to advise each of the conjointly accused of his or her right to separate counsel; Rule 44(c) does not require the advice on the record.
The right to counsel is fundamental under both our federal constitution (U.S. Const. Amend. 6) and state constitution (La. Const. Art. I, § 13). When the Louisiana Legislature speaks and states that the trial court judge shall advise on the record a defendant in a criminal case of his right to separate counsel, we take it at its word. We read Article 517A as mandating that the trial court shall at some point during the pre-trial proceedings inquire of counsel whether counsel perceives a problem with the joint representation and shall on the record advise the accused of his right to separate representation. Even if counsel asserts that no problem exists, the language in the statute requires the court to advise the accused of his right to separate counsel and sever the trial of the accused from the co-accused or take such other measure "as may be appropriate to protect each defendant's right to counsel." *696 (The court could obtain an appropriate waiver from the accused.) See Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); State v. Franklin, 400 So.2d 616 (La.1981); State v. Marshall, 414 So.2d 684 (La.1982) cert denied, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); State v. Edwards, 430 So.2d 60 (La.1983); State v. Seay, 521 So.2d 1206 (La.App. 2 Cir. 1988).
In this case, by the joint representation of Bowie and Holmes, defense counsel may have been effectively prohibited from cross-examining one or the other defendant about the totality of the circumstances of the case. A similar problem existed during closing argument because defense counsel may not plausibly have had the ability to argue to the jury that they should acquit one defendant without arguing that the controlled dangerous substance belonged to the other defendant, regardless of what he testified to on the stand. See State v. Morrow, 440 So.2d 98 (La.1983).
The only case to specifically analyze La. C. Cr. P. art. 517 is State v. Morris, 98-2684 (La.App. 4 Cir. 3/10/99), 729 So.2d 1141, writ not considered, 99-1025 (La.4/30/99), 741 So.2d 6, which held that a trial court did not abuse its discretion in allowing a defendant to withdraw a guilty plea when the court failed to comply with La.C.Cr.P. art. 517. The opinion in that case clearly recognizes the importance of the then recently added provision to our law.
In this case, a harmless error analysis prevents a reversal primarily because both Bowie and Holmes took the stand. However, because the issue is raised in the context of ineffective assistance of counsel and not as a mere assignment of error, the defendants will be precluded from raising the issue in an application for post conviction relief. This again demonstrates why arguments of ineffective assistance of counsel should generally be addressed only as a post-conviction relief matter and not on the appeal of the conviction. We therefore conclude that the original opinion in regard to the issue of ineffective assistance of counsel is wrong.
Because the record is totally silent with respect to compliance with Article 517 and because the State concedes that the defendants were not advised on the record of their Article 517 rights, we respectfully dissent from the conclusion reached by the majority.
NOTES
[1] Gibson said on cross examination that Bailey does not have a light skinned hand, but that Holmes had a hand that looked "identical."
[2] These alleged inconsistencies were that Officer Gibson could not have known how the defendants were positioned in the room because he did not enter until they were already handcuffed and on the floor. Officer Gibson made it clear that his description of the position of the defendants was based on information furnished to him by officers who preceded him into the room. There is nothing inconsistent in officer Gibson's testimony. There was no hearsay objection made to Officer Gibson's testimony. This fact was established on cross-examination as set out above. Regardless, the position of the defendants in the room has no bearing on the validity of the search warrant.